United States District Court
Southern District of Indiana
New Albany Division

Alexander G. Digenis, M.D.

                *Plaintiff*,

v.

Eli R. Hallal, M.D.
   Serve: 109 Brandywynne Ln.
        New Albany, IN 47150

Eli R. Hallal M.D., LLC
   Serve: Eli Hallal
        2 Silvercrest Dr., Suite 100
        New Albany, IN 47150

Susan P. Hallal
   Serve: 109 Brandywynne Ln.
        New Albany, IN 47150

                *Defendants*.

Case No. _____

**Complaint and Demand for Jury Trial**

    Plaintiff Alexander G. Digenis, M.D., by counsel, and for his complaint against Eli R. Hallal, Susan P. Hallal, and Eli R. Hallal M.D., LLC, states as follows:

**Nature of the Case**

    1.    Several years ago, a Kentucky court entered a judgment against Dr. Eli Hallal, ordering him to pay Dr. Digenis $147,230.28, plus pre- and post-judgment interest (the "Judgment"). But Dr. Hallal didn't want to pay the Judgment. So he began fraudulently hiding assets.

    2.    For instance, Dr. Hallal transferred his 100% ownership interest in the medical practice he founded, Eli R. Hallal MD, LLC (the "LLC") to his wife, Susan. Though she is not a doctor and exercises no control over the LLC's operations, Susan gets to keep all of the LLC's profits as its sole member. And she uses those profits to cover Dr.

1

Hallal's living expenses, as well as her own. As a result, Dr. Hallal now enjoys the benefits of owning a 100% interest in a profitable company without any of the downside collection risk.

3. Not only that, Dr. Hallal recently stopped taking a salary for his work at the LLC. As its only practicing physician, Dr. Hallal's treatment of patients is the LLC's sole source of income. But rather than take a paycheck, which could be garnished, Dr. Hallal has opted to forgo any consideration for services rendered to the company. The result is that money he would have received as garnishable wages is instead retained by the company as profit, distributed to Susan, then used to fund Dr. Hallal's lifestyle.

4. Finally, Dr. Hallal admitted in a post-judgment deposition that he and Susan jointly owned a non-exempt investment account at Edward Jones. But as soon as the deposition ended, and before Dr. Digenis could seek a garnishment order, Dr. Hallal transferred the entire balance to Susan and closed the account.

5. Each of these transactions is a textbook example of a fraudulent transfer. In an attempt to avoid paying the Judgment, Dr. Hallal has illegally transferred every nonexempt asset he owns, including his own salary, either to his wife or to the LLC. And as a result, the injuries to Dr. Digenis that gave rise to the Judgment remain unredressed to this day.

## Parties

6. Dr. Digenis is a citizen and resident of Kentucky.

7. Dr. Hallal is a citizen and resident of Floyd County, Indiana.

8. Susan Hallal is a citizen and resident of Floyd County, Indiana.

9. Eli R. Hallal MD, LLC, is a limited liability company organized under the laws of Indiana with its principal place of business in Floyd County. Susan, its sole member, is a citizen and resident of Indiana.

## Jurisdiction and Venue

10. This court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because Dr. Digenis is a citizen of Kentucky, Defendants are all citizens and residents of Indiana, and the amount in controversy exceeds $75,000 exclusive of costs and interest.

11. This Court may properly exercise personal jurisdiction over all Defendants because they are citizens and residents of Indiana.

12. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Indiana.

## Factual Allegations

### I. The Judgment

13. Dr. Digenis and Dr. Hallal were two among 30 physician investors in the now-defunct Kentuckiana Medical Center, a hospital venture formerly located in Clarksville, Indiana.

14. In 2011, the hospital defaulted on its mortgage. So the lender foreclosed and obtained a judgment in Kentucky state court for the balance of the loan against Dr. Digenis, Dr. Hallal, and a third doctor, Christodulos Stavens, all of whom had personally guaranteed the loan. Dr. Digenis's share of the liability was $529,984.

15. Dr. Digenis filed crossclaims against Drs. Hallal and Stavens seeking a partial contractual indemnification. In 2009, Dr. Digenis had transferred two of his five membership units in the entity that had defaulted on the hospital's mortgage—one to Hallal

and one to Stavens. The three doctors executed purchase agreements reflecting the transfer and agreeing to indemnify Dr. Digenis against any liability to the mortgage lender arising from his ownership of the shares. Dr. Digenis's crossclaims sought to enforce those purchase agreements by (1) requiring Hallal and Stavens each to indemnify him for one fifth of his share of the foreclosure judgment, and (2) recovering the amounts each doctor had failed to pay for the transferred units and attorney's fees as the prevailing party enforcing these obligations.

16. On January 11, 2013, the court entered summary judgment in Dr. Digenis's favor, awarding $147,342.18 against Dr. Stavens and $147,230.28 against Dr. Hallal. *See* Ex. 1, Jefferson Circuit Court Judgment.

17. The Kentucky Court of Appeals affirmed on March 31, 2017. *See Stavens v. Digenis*, No. 2015-CA-000359-MR, 2017 WL 1203395 (Ky. Ct. App. Mar. 31, 2017).

## II.   Collection Efforts to Date

18. Dr. Digenis domesticated the Judgment in Indiana and initiated post-judgment proceedings in Floyd Superior Court in early 2015.

19. In response to post-judgment discovery, Dr. Hallal indicated that his primary source of income was an annual salary from his then-employment as medical director at Kentuckiana Medical Center.

20. So, on October 16, 2015, Dr. Digenis filed a motion to garnish Dr. Hallal's Kentuckiana Medical Center wages. Five months later, the court granted the motion, and Dr. Digenis began receiving periodic payments of less than $700 toward the Judgment every two weeks. These payments continued until Dr. Hallal's employment at the hospital

terminated in 2019. When the wage garnishments ended, the vast majority of the Judgment and accrued interest was still unpaid.

21. In July 2021, Floyd Superior Court ordered Dr. Hallal to submit to a telephonic deposition to disclose any nonexempt property that might be applied to the Judgment, given that garnishment of his hospital wages had ended.

### III. The Fraudulent Transfers

22. The deposition occurred on July 29, 2021.

23. Dr. Hallal represented that he practices medicine full-time on behalf of Eli R. Hallal MD, LLC and that the LLC earns a profit by billing the patients he treats. But Dr. Hallal himself receives no compensation for his services. Though he acknowledged that, as the only medical practitioner the LLC employs, his treatment of patients is the LLC's sole source of revenue, he renders those professional services for no consideration.

24. This was a departure from his earlier practice. In early post-judgment discovery, Dr. Hallal indicated that he did receive income from the LLC. But beginning no later than July 2021, he performed work for no payment.

25. Dr. Hallal also represented that his wife, Susan, is the sole owner of the LLC and denied that he had ever held an ownership interest in the entity. As such, Susan personally receives all profits from the business. Other than social security, those profits are the Hallals' only source of household income. According to Dr. Hallal, Susan performs virtually no services for the company besides some occasional bookkeeping tasks and serving as a "source of inspiration." And when asked what Susan's primary occupation is, Dr. Hallal responded, "Housewife."

26. But Dr. Hallal's assertion that Susan has always been the sole owner of the LLC is directly contradicted by the LLC's own representations in years' worth of Secretary of State filings. Every business entity report filed by the LLC from its founding until July 2021 identified Eli Hallal, and *only* Eli Hallal, as a "member" of the LLC. *See* Ex. 2, Eli R. Hallal MD, LLC Secretary of State Filings. These filings were signed and verified by Dr. Hallal himself under penalty of perjury. *Id.*

27. It wasn't until July 30, 2021—one day after his deposition—that Dr. Hallal submitted a "Change of Officer" form on the LLC's behalf stating, for the first time in the company's history, that Susan had become the LLC's sole member and that Dr. Hallal as merely its president. That statement was also signed and submitted under penalty of perjury.

28. Upon information and belief, Dr. Hallal transferred his interest in the company to Susan sometime between July 7, 2021 (the last date on which the LLC represented in a state filing that Dr. Hallal was the sole member) and July 30, 2021 (the day after his deposition) in an attempt to thwart Dr. Digenis's collection efforts.

29. Nor was that the only rear-guard action Dr. Hallal took to avoid the Judgment in the wake of his deposition. During the deposition, Dr. Hallal represented that he and Susan jointly owned a non-retirement brokerage account with Edward Jones Investments. Based on Dr. Hallal's statements, Dr. Digenis subpoenaed documents from Edward Jones. The documents showed that around the time of Dr. Hallal's statements in the July 2021 deposition, he transferred nearly the entire balance of the jointly held brokerage account—over $26,000—to a new account solely in Susan's name. Susan then promptly liquidated the new account.

30. As a result of these transfers, Dr. Hallal has no income or other assets with which to pay the Judgment against him.

31. Thus, the sum of his debts is far greater than the sum of his assets. And since his employment at Kentuckiana Medical Center ended in 2019, and the wage garnishments terminated, Dr. Hallal has made no attempts to satisfy his debt to Dr. Digenis and is, therefore, presumptively insolvent.

### Count I: Fraudulent Transfer (LLC Interest)

32. Dr. Digenis incorporates the allegations above as if fully set forth herein.

33. In the period between July 7 and July 30, 2021, Dr. Hallal transferred his interest in the LLC to his wife, Susan.

34. That transfer occurred well after the Judgment against Dr. Hallal arose.

35. Upon information and belief, Dr. Hallal received no reasonably equivalent value in exchange for the transfer.

36. At the time of the transfer, Dr. Hallal had no remaining assets with which to pay his debt to Dr. Digenis.

37. At the time of the transfer, Dr. Hallal had incurred, intended to incur, and believed or reasonably should have believed that he would incur debt to Dr. Digenis beyond his ability to pay.

38. Additionally, Dr. Hallal's transfer of the LLC interest was made by Dr. Hallal, the LLC, and Susan with actual intent to hinder, delay, or defraud Dr. Digenis. The following factors demonstrate Defendants' fraudulent intent:

    a. The transfer occurred after the Judgment had been incurred.

    b. Dr. Hallal retained possession and control of the interest after transferring it to Susan by continuing to run the company himself, to make all business and operational decisions for the company, and to receive all the benefits of the transferred membership interest, including use of profit distributions received by Susan, which were the couple's only source of household income other than Social Security.

    c. The transfer occurred after a proceeding supplemental had been instituted by Dr. Digenis in Indiana state court to enforce the Judgment.

    d. The transfer violates Indiana's corporate practice of medicine doctrine, which prohibits non-physicians from owning a medical practice.

    e. The transfer of the LLC interest, along with the transfer of his income to the LLC, was of substantially all of Dr. Hallal's assets.

    f. Dr. Hallal attempted to conceal his continued receipt of profit distributions from the LLC by characterizing them as distributions to Susan, and not to himself.

    g. Dr. Hallal received no consideration for the transfer.

    h. Dr. Hallal was insolvent at the time of the transfer or became insolvent as a result of it.

39. Dr. Hallal's transfer of the LLC interest to Susan is voidable as to Dr. Digenis.

40. Dr. Digenis is entitled to damages and a judgment jointly and severally against all Defendants to the extent necessary to satisfy the Judgment.

### Count II: Fraudulent Transfer (Income)

41. Dr. Digenis incorporates the allegations above as if fully set forth herein.

42. In years past, Dr. Hallal regularly received income from the LLC for professional services rendered as a physician. But dating from at least July 2021, and perhaps earlier, Dr. Hallal has diverted all income from his medical practice to the LLC.

43. The diversion of Dr. Hallal's income was made by Dr. Hallal, the LLC, and Susan with actual intent to hinder, delay, or defraud Dr. Digenis. The following factors demonstrate Defendants' fraudulent intent:

    a. The transfers of income occurred after the Judgment had been incurred.

    b. Dr. Hallal retained possession and control of the income after transferring it to the LLC by taking the same diverted income in the form of distributions from the LLC either to himself or to Susan, then using those distributions as the couple's primary source of household income.

    c. The transfers occurred after a proceeding supplemental had been instituted by Dr. Digenis in Indiana state court in order to enforce the Judgment.

    d. The transfers of income, along with the transfer of the LLC interest, were of substantially all of Dr. Hallal's assets.

    e. Dr. Hallal attempted to conceal his continued receipt of income for medical services rendered by laundering that income through the LLC, then characterizing it as a distribution either to himself or to Susan.

    f. Dr. Hallal received no consideration for his diversion of income.

    g. Dr. Hallal was insolvent at the time of these transfers or became insolvent as a result of them.

44. In addition, Dr. Hallal received no reasonably equivalent value for his transfer of income to the LLC, and at the time of the transfer, Dr. Hallal had incurred, intended to incur, and believed or reasonably should have believed that he would incur debt to Dr. Digenis beyond his ability to pay.

45. Dr. Hallal's income transfers to the LLC are voidable as to Dr. Digenis.

46. Dr. Digenis is entitled to damages and a judgment jointly and severally against all Defendants to the extent necessary to satisfy the Judgment.

### Count III: Fraudulent Transfer (Edward Jones Account)

47. Dr. Digenis incorporates the allegations above as if fully set forth herein.

48. Prior to his July 2021 deposition, Dr. Hallal and Susan jointly owned a brokerage account with Edward Jones Investments with a balance exceeding $26,000.

49. Immediately after disclosing the existence of that account during his post-judgment deposition, Dr. Hallal promptly transferred his entire interest in the account balance to an account solely in Susan's name. Susan then liquidated the entire balance.

50. That transfer occurred after the Judgment against Dr. Hallal arose.

51. Dr. Hallal received no reasonably equivalent value in exchange for the transfer.

52. At the time of the transfer, Dr. Hallal had no remaining assets with which to pay his debt to Dr. Digenis.

53. At the time of the transfer, Dr. Hallal had incurred, intended to incur, and believed or reasonably should have believed that he would incur debt to Dr. Digenis beyond his ability to pay.

54. Additionally, the transfer was made by Dr. Hallal and Susan with actual intent to hinder, delay, or defraud Dr. Digenis. The following factors demonstrate Defendants' fraudulent intent:

   a. The transfer occurred after the Judgment had been incurred.
   b. Dr. Hallal retained possession and control of the account funds because the funds were transferred to Susan and used to cover household living expenses incurred by both Dr. Hallal and Susan.
   c. The transfer occurred after a proceeding supplemental had been instituted by Dr. Digenis in Indiana state court in order to enforce the Judgment.
   d. The transfer of the account funds, along with the transfers of Dr. Hallal's income and his LLC interest, was of substantially all of Dr. Hallal's assets.
   e. Dr. Hallal attempted to conceal the transfer by testifying that the account existed, then quickly removing the entire balance before a garnishment order could issue.
   f. Dr. Hallal received no consideration for the transfer.
   g. Dr. Hallal was insolvent at the time of the transfer or became insolvent as a result of it.

55. Dr. Hallal's transfer of the Edward Jones account funds to Susan is voidable as to Dr. Digenis.

56. Dr. Digenis is entitled to damages and a judgment jointly and severally against Dr. Hallal and Susan to the extent necessary to satisfy the Judgment.

### Count IV: Declaratory Judgment

57. Dr. Digenis incorporates the allegations above as if fully set forth herein.

58. Eli R. Hallal MD, LLC, is a mere façade and instrumentality for the activities of its sole member, Susan Hallal.

59. The LLC is undercapitalized. Susan paid nothing for her interest in the company. And according to Dr. Hallal's own statements, the company carries a bank account balance of only $3000, a tiny sum for a medical practice that treats numerous patients, engages in significant online advertising, and employs a handful of nurses and other support staff.

60. Susan and Dr. Hallal regularly use company funds to pay for personal expenses. For example, Dr. Hallal admitted during his deposition that cash he possesses at any given time, as well as the money he uses to pay his own personal credit card bills, typically comes from Susan and "the office"—a term he uses to refer to the LLC.

61. Additionally, Indiana's corporate practice of medicine doctrine "prohibits the ownership of medical practices by non-licensed entities and individuals." *Performance Dynamics, Inc v. Flynn*, 2016 WL 3902584, at *8 (S.D. Ind. July 18, 2016). Susan is not a licensed physician, so under Indiana law, she cannot own a medical practice.

62. The LLC has also engaged in fraudulent conduct by cooperating in a scheme orchestrated by Susan and Dr. Hallal to assist Dr. Hallal in evading efforts to collect the Judgment against him. Specifically, the LLC ceased paying Dr. Hallal garnishable wages, accepted his professional services for no consideration, then paid his would-be wages to Susan as profit distributions in an attempt to render Dr. Hallal judgment proof.

63. The continued recognition of the LLC as a separate entity from its members would sanction fraud and promote injustice.

64. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), et seq., and Federal Rule of Civil Procedure 57, an actual controversy exists, and Dr. Digenis is entitled to a declaration and finding that Susan is personally liable for the liabilities of the LLC, including the LLC's liability as transferee of Dr. Hallal's fraudulently transferred income.

### Count V: Civil Conspiracy

65. Dr. Digenis incorporates the allegations above as if fully set forth herein.

66. Dr. Hallal, Susan, and the LLC engaged in concerted action to achieve the fraudulent transfer of the assets described above in order to prevent Dr. Digenis from collecting the amounts owed to him under the Judgment.

67. Specifically, Dr. Hallal transferred his valuable interest in a profitable LLC interest to Susan to avoid garnishment, the LLC approved the transfer, and Susan accepted it. In addition, Dr. Hallal diverted his income to the LLC, the LLC accepted his services free of charge, and the LLC paid that income to Susan and at her behest in the form of profit distributions to ensure that Dr. Hallal could retain access to the income through his wife while avoiding any risk of wage garnishment.

68. As a result of their concerted acts, Defendants have caused Dr. Digenis to suffer damages.

69. Dr. Digenis is entitled to damages and a judgment jointly and severally against all Dr. Hallal and Susan to the extent necessary to satisfy the Judgment.

### Count VI: Punitive Damages

70. Dr. Digenis incorporates the allegations above as if fully set forth herein.

71. In fraudulently transferring and concealing Dr. Hallal's assets, Defendants acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a

mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.

72. As such, the Court should award punitive damages in an amount to be determined at trial.

### Prayer for Relief

WHEREFORE the Plaintiff, Alexander G. Digenis, M.D., respectfully requests the following relief:

A. A trial by jury;

B. A judgment against Dr. Hallal, Susan, and the LLC jointly and severally, for compensatory and punitive damages;

C. A judgment against Susan declaring that the entity separateness of Eli R. Hallal MD, LLC, is to be set aside and that Dr. Digenis is entitled to assert any claims for relief attributable to the LLC against Susan directly;

D. An injunction against further disposition by Defendants of the assets transferred and their proceeds;

E. Any other legal and equitable relief to which this Court deems the Plaintiff is entitled.

Respectfully submitted,

*s/ Burt A. Stinson*
David S. Kaplan
Michael C. Merrick
Burt A. (Chuck) Stinson
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
(502) 416-1630
dkaplan@kaplanjohnsonlaw.com
mmerrick@kaplanjohnsonlaw.com